UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRET MITCHELL, | Case No.  1:22-cv-01088-EPG |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISSING CASE |
| v. | |
| ECOLAB, INC., | (ECF No. 9). |
| Defendant. | |

Before the Court is Defendant Ecolab, Inc's motion to compel Plaintiff Bret Mitchell to participate in arbitration. (ECF No. 9). Defendant requests that the Court dismiss this case or otherwise stay the case pending the completion of arbitration. (ECF No. 9). For the reasons given below, the Court will grant Defendant's motion to compel arbitration and dismiss this action without prejudice.[1]

## I.      BACKGROUND

Plaintiff commenced this action by filing a complaint in Madera County Superior Court on July 21, 2022. (*See* ECF No. 1-1). Plaintiff's complaint alleges several employment discrimination claims under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12900, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e), *et seq*

---

[1] The parties have consented to jurisdiction by United States Magistrate Judge for all proceedings in this action, including trial and entry of judgment, pursuant to 28 U.S.C. 636(c)(1). (ECF Nos. 3, 4, 5).

("Title VII"). (*Id.*) Plaintiff's complaint generally alleges that Plaintiff was wrongfully terminated by Defendant after Defendant denied Plaintiff's request for a religious exemption or reasonable accommodation from Defendant's mandatory COVID-19 vaccine requirement. (*Id.*) On August 26, 2022, Defendant filed a timely notice of removal. (ECF No. 1).

On December 22, 2022, Defendant filed its motion to compel arbitration and stay the case. (ECF No. 9). Plaintiff filed an opposition on January 20, 2023. Defendant filed a reply on February 3, 2023. (ECF No. 11). A hearing was held on February 10, 2023. (ECF No. 16). George Moschopoulos appeared on behalf of Plaintiff. (*Id.*) David Hoiles appeared on behalf of Defendant. (*Id.*)

## II.    MOTION TO COMPEL ARBITRATION

### A.  Defendant's motion

Defendant moves to compel arbitration on the ground that Plaintiff and Defendant entered into a valid and enforceable arbitration agreement on October 9, 2014, when Plaintiff completed Ecolab's Associate Resolution Resource ("EARR") program training module and electronically signed the Arbitration Agreement. (ECF No. 9-1, p. 6-7).

In support of its motion to compel, Defendant submits two declarations. The first is from Stefanie Cossalter Motley, a human resources representative in Defendant's Employee Relations and Compliance department. (ECF No. 9-2, p. 1-6). This declaration discusses the implementation of the EARR program in October 2014 as well as the process by which Defendant's employees, including Plaintiff, accessed the training program and electronically signed the agreement. (*See id.*) Attached to the declaration are several exhibits: the email sent to Defendant's employees describing the mandatory EARR training (*id.* at 8), a copy of the written notice, Arbitration Agreement and EARR program material mailed to Defendant's employees (*id.* at 10-17), screenshots of the EARR training module slides (*id.* at 19-41), and the email confirmation sent to Plaintiff's work email acknowledging that Plaintiff had completed the EARR training and entered into a binding arbitration agreement with Defendant (*id.* at 43-45). The second declaration is from defense counsel, David Hoiles, and discusses counsel's informal attempts to enforce the arbitration agreement. (ECF No. 9-3).

Defendant additionally argues the Arbitration Agreement is enforceable because it is

2

neither procedurally nor substantively unconscionable. (ECF No. 9-1, p. 11-16). As for

procedural unconscionability, Defendant argues that agreements presented as mandatory

conditions of employment are not strictly unenforceable as adhesion agreements. (*Id.* at 13). As

for substantive unconscionability, Defendant argues the Arbitration Agreement is sufficient under

California law because it satisfies the six *Armendariz* conditions. (*Id.* at 14-17) (citing

*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 102-18).

      Defendant further argues that Plaintiff's claims fall within the scope of the Arbitration

Agreement, which provides as follows:

> The Agreement is intended to create a procedural mechanism for the final
> resolution of all Disputes falling within its terms. Neither the Company nor its
> present and former Associates may commence an action in court concerning a
> Dispute covered by the Agreement.
>
>    . . .
>
> "Dispute" means any and all claims or controversies alleging violations of federal,
> state, local or common law between an Associate and the Company (and vice
> versa) arising out of or in any way related to the application for employment,
> employment or cessation of employment with the Company, including all
> previously unasserted claims prior to the date of this Agreement. The term
> "Dispute" includes, without limitation, claims, demands or actions under Title VII
> of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age
> Discrimination in Employment Act of 1967, the Americans with Disabilities Act
> of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act
> of 1938, the Equal Pay Act of 1963 and all amendments thereto and any other
> federal, state or local statute, regulation or common law doctrine regarding
> employment, employment discrimination, the terms and conditions of
> employment, termination of employment, compensation, overtime, breach of
> contract, retaliation, whistleblowing, defamation or employment-related tort.

(ECF No. 9-2, p. 36). Thus, the Arbitration Agreement specifically provides for arbitration of all

disputes arising out of Title VII of the Civil Rights Act, as well as all claims between Plaintiff and

Ecolab "arising out of or in any way related to the application of employment, employment or

cessation of employment." (ECF No. 9, p. 5).

      For those reasons, Defendant argues that, pursuant to the FAA, the Court must compel

Plaintiff to arbitrate his claims, and stay this case pending completion of the arbitration. (*Id.* at

17).

    B. Plaintiff's opposition

      Plaintiff's opposition argues that there is not an enforceable agreement to arbitrate

between the parties. Plaintiff argues that Defendant fails to set forth admissible evidence of a valid arbitration agreement signed by Plaintiff. (ECF No. 10, p. 4). Plaintiff asserts that Defendant must offer admissible evidence under the same evidentiary standards and rules used in summary judgment. (*Id.*) Plaintiff contends that Ms. Motley's declaration is made without personal knowledge because although she "purports to testify about events that happened in October 2014. . .she does not testify that she was employed by Defendant during that time period." (ECF No. 10, p. 4). Additionally, Plaintiff argues that Ms. Motley cannot authenticate the training module slides or emails that she did not write or send. (*Id.*) Further, Plaintiff argues that Ms. Motley does not offer any evidence of "personal knowledge that Plaintiff entered the last [five] digits of his identification number," nor does Ms. Motley "rule out the possibility that any other person with knowledge of Plaintiff's identification number (e.g., someone in Defendant's HR department) could have just as easily entered the identification number and caused the email to be generated." (*Id.*) Finally, Plaintiff argues the Arbitration Agreement is unenforceable because it was not actually signed by either party and Defendant cannot authenticate Plaintiff's electronic signature. (*Id.* at 6).

C. Defendant's Reply

Defendant challenges Plaintiff's contention that summary judgment evidentiary standards apply to motions to compel, but argues, nonetheless, that Ms. Motley's role as a human resources representative provides the personal knowledge and foundation needed to offer testimony about Defendant's policies and procedures that were put in place in October 2014. (ECF No. 11, p. 4-6). Additionally, Defendant argues that the exhibits are admissible as business records. (*Id.*) As for the validity of Plaintiff's electronic signature, Defendant argues that it has submitted sufficient proof that Plaintiff's signature is authentic as Ms. Motley's declaration describes the secure procedure by which employees, including Plaintiff, electronically accepted the terms of the Arbitration Agreement. (*Id.* at 8-9). Defendant points out that Plaintiff has not offered any evidence that suggests another individual had access to Plaintiff's Ecolab email account or otherwise accessed the unique link sent to Plaintiff's work email and entered the last five digits of Plaintiff's employee identification number required to complete the EARR training and electronically sign the Arbitration Agreement. (*Id.* at 6-7).

1    **III.    LEGAL STANDARDS**

2            The Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and

3    enforceable, save upon such grounds as exist at law or in equity for the revocation of any

4    contract." 9 U.S.C. § 2. The FAA also permits a party "aggrieved by the alleged ... refusal of

5    another to arbitrate" to petition for an order compelling arbitration, 9 U.S.C. § 4. A district court's

6    role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2)

7    whether the agreement encompasses the dispute at issue." *Revitch v. DIRECTV, LCC*, 977 F.3d

8    713, 716 (9th Cir. 2020) (citing *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th

9    Cir. 2000)). If the answer to both questions is "yes," then the district court must "enforce the

10   arbitration agreement in accordance with its terms." *Id.*; *see also Chiron*, 207 F.3d at 1130

11   ("[T]he Act 'leaves no place for the exercise of discretion by a district court, but instead mandates

12   that district courts shall direct the parties to proceed to arbitration on issues as to which an

13   arbitration agreement has been signed.'") (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S.

14   213, 218 (1985)). The party moving to compel arbitration bears the burden of demonstrating that

15   both elements are met. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir.

16   2015).

17           The FAA provides a procedural framework for addressing motions to compel. *Hansen v.

18   LMB Mortgage Services, Inc.*, 1 F.4th 667, 670 (2021) (citing 9 U.S.C. § 4). Thus,

> Under § 4, in response to a motion to compel arbitration, the district court must "hear the parties." *Id.* If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* But "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.* In applying this language, district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure.

*Id.* In resolving a motion to compel arbitration, "[t]he summary judgment standard [of Federal

Rule of Civil Procedure 56] is appropriate because the district court's order

compelling arbitration is in effect a summary disposition of the issue of whether or not there had

been a meeting of the minds on the agreement to arbitrate." *Id.*

Under this standard of review, "[t]he party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration." *Smith v. H.F.D. No. 55, Inc.*, No. 2:15-cv-01293-KJM-KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)). "A material fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Conversely, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party bears "the initial burden of production and the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party "carries its burden of production, [the non-moving party] must produce evidence to support [its] ... defense." *Id.*

## IV.   ANALYSIS

### A.   Whether there is an Agreement to Arbitrate

#### 1.   Evidentiary objections

First, the Court will consider Plaintiff's objections to the evidence provided by Defendant in support of the motion to compel. Plaintiff argues that the entire declaration provided by Ms. Motley is inadmissible as evidence based on lack of personal knowledge, lack of foundation, and lack of authentication.

As noted above, "[o]n a motion to compel arbitration, the court applies a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure." *Alvarez v. T-Mobile USA, Inc.*, No. 2:10-cv-2372-WBS-GGH, 2011 WL 6702424, at *8, (E.D. Cal. Dec. 21, 2011). Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Thus, at the summary judgment stage, the focus of the objection is not "the admissibility of the evidence's form" but on the "admissibility of its contents." *Fraser v.*

*Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Lomeli v. Midland Funding, LLC*, No. 19-cv-01141-LHK, 2019 WL 4695279, at *7 (N.D. Cal. Sept. 26, 2019) ("On a motion to compel arbitration…the Court 'does not focus on the admissibility of the evidence's form,' so long as the contents are capable of presentation in an admissible form at trial.") (internal citations omitted).

   The Court has reviewed Ms. Motley's declaration and concludes that Plaintiff's evidentiary objections lack merit. To the extent that Plaintiff challenges the declarant's ability to authenticate the exhibits, such objections "on the basis of a failure to comply with the technicalities of authentication requirements or the best evidence rule are...inappropriate" so long as such documents could be properly authenticated at trial. *Alvarez*, 2011 WL 6702424 at *10-11. The burden under Federal Rule of Evidence 901 to authenticate a document is not high, the proponent simply needs to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Kalasho v. BMW of N. Am., LLC*, 520 F. Supp. 3d 1288, 1293 (S.D. Cal. 2021) (quoting Fed. R. Evid. 901(a)).

   Here, the declaration is based, in part, on Ms. Motley's review of documents "retained in the regular course of the administration of the EARR program and Ecolab's email retention practices." (ECF No. 9-2, p. 2, 5). Moreover, Ms. Motley's declaration is also based on her own knowledge, her review of business records, and on her position as a Human Resources Representative II, which makes her "familiar with Ecolab's practices with respect to employee agreements, specifically including arbitration agreements between Ecolab and its employees." (*Id.* at 2). This lays a proper foundation and establishes her personal knowledge as to her declaration and the attached exhibits. *See Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688 JVS (JCGx), 2017 WL 4676580, at *2 (C.D. Cal. June 1, 2017) (concluding that witness's position, review of business records, and familiarity with company procedures laid a proper foundation and established her testimony about an arbitration was based on her personal knowledge); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

   Further, the exhibits are admissible under Federal Rule of Evidence 803(6) as a business record. Rule 803(6) provides that a record is not excluded by the rule against hearsay if:

(a) [T]he record was made at or near the time by — or from information transmitted by — someone with knowledge;

(b) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(c) making the record was a regular practice of that activity;

(d) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification;

and (e) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Here, Ms. Motley's declaration is sufficient as to the first four elements. *See Lomeli*, 2019 WL 4695279, at *5 ("Rule 803(6)'s foundation requirement 'may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation.'") (citations omitted). Moreover, Plaintiff has not demonstrated that Ms. Motley, or the method or circumstances of preparation regarding the exhibits, indicate a lack of trustworthiness.

Accordingly, Plaintiff's evidentiary objections to Ms. Motley's declaration and the attached exhibits are overruled.

### 2.    Lack of signature on arbitration agreement

Plaintiff argues that "Defendant has failed to produce a true and correct copy of any arbitration agreement actually *signed* by Plaintiff." (ECF No. 10, p. 2) (emphasis in original). Plaintiff argues that Defendant fails to authenticate Plaintiff's e-signature. (*Id.* at 6). Additionally, Plaintiff contends that the Arbitration Agreement cannot bind Plaintiff because it is not signed by either party. (*Id.*)

"Arbitration is a product of contract[,]" and a court will not grant a motion to compel arbitration unless it finds that there is a "clear agreement" to arbitrate. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014) (citations omitted). "When determining whether a valid contract to arbitrate exists, [courts] apply ordinary state law principles that govern contract formation." *Id.* at 1093 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)). "In California, a 'clear agreement' to arbitrate may be either express or implied

8

in fact." *Id.* (citing *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.*, 55 Cal. 4th 223, 236, (Cal. 2012)). "A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement." *Pinnacle*, 55 Cal. 4th at 236. Acceptance of an agreement to arbitrate is implied-in-fact where the conduct of the contracting parties suggests such acceptance. *See Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000) (noting that a party's acceptance of an agreement may be "implied-in-fact where . . . the employee's continued employment constitutes her acceptance of an agreement proposed by her employer"). The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

As set forth in Ms. Motley's declaration, employees were sent a unique link to access the EARR training module to their Ecolab email account. (ECF No. 9-2, p. 3). Ecolab employees create their own unique passwords for their Ecolab email accounts that "were changed regularly by each employee." (*Id.*) In order to access the training module, "an employee needed to enter the last five digits of the employee's identification number, thereby confirming the employee's identity in agreeing to the Arbitration Agreement." (*Id.*). The training module explained Ecolab's EARR program and Arbitration Agreement. (*Id.* at 3, 19-28). Specifically, the training states that "[i]f you do not sign the Agreement, you are choosing to end your employment with Ecolab." (*Id.* at 29). Before completing the training module, employees were given the opportunity to electronically sign the Consent to Proceed Electronically Agreement. (*Id.* at 3-4, 29-34). If an employee consented to proceed electronically by clicking the "Agree" button, then the employee would be prompted to read the Arbitration Agreement. (*Id.* at 4, 34-40). The employee would then be asked to agree with the following statement: "I READ, UNDERSTAND, AND ACCEPT THE TERMS OF THE MEDIATION AND ARBITRATION AGREEMENT." (*Id.* at 4, 40). When the employee clicked the "Agree" button, "the system automatically generated an e-mail confirming the agreement" and "reported the completion of the training in the on-line training database." (*Id.* at 5, 41). Plaintiff received an email sent to "bret.mitchell@ecolab.com" confirming that Plaintiff signed the Arbitration Agreement on October 9, 2014. (*Id.* at 5, 43-44). According to Ms. Motley's declaration, "[t]his email would not have been sent to him unless he

1  had electronically signed the Arbitration Agreement." (*Id.* at 5).

2        Defendant's production of this evidence meets its burden of proving the existence of the

3  Arbitration Agreement. As discussed above, the Court overrules Plaintiff's evidentiary objections

4  to Ms. Motley's declaration and the attached exhibits. And although Plaintiff argues that neither

5  party "signed" any arbitration agreement, a party's signature is just one way to show acceptance

6  of an agreement. *Pinnacle*, 55 Cal. 4th at 236. Here, Plaintiff's electronic acceptance of the terms

7  of the mediation and arbitration agreement, as evidenced by the October 9, 2014 email, as well as

8  Defendant's continued employment of Plaintiff is sufficient to establish an agreement by the

9  parties based on their conduct. *See Aquino v. Toyota Motor Sales USA, Inc.*, No. 15-cv-05281-

10 JST, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) (concluding that plaintiff agreed to

11 arbitration by receiving email that read, "[i]f you do not opt out, and you remain employed after

12 November 10, 2013, you will have consented to the Mutual Agreement to Arbitrate Claims," and

    thereafter continuing to work for her employer and failing to opt-out of the agreement).

13       Thus, the Court concludes that an arbitration agreement exists between the parties.[2]

14            **B.       Whether the Agreement Covers the Dispute**

15       The Court turns to the final issue presented: whether the arbitration provisions cover the

16 claims brought in Plaintiff's complaint. Defendant asserts that Plaintiff's FEHA and Title VII

17 claims are within the scope of the Arbitration Agreement, which specifically requires arbitration

18 of any dispute brought under Title VII or any state statute regarding employment discrimination

19 and termination of employment. (*See* ECF No. 9-1, p. 11; ECF No. 9-2, p. 36). Plaintiff's

20 opposition does not challenge whether the Arbitration Agreement applies to the claims raised in

21 Plaintiff's complaint. After reviewing Plaintiff's complaint (ECF No. 1-1, p. 5-32), the Court

22 finds that Plaintiff's complaint alleges claims that are subject to the terms of the Arbitration

23 Agreement.

24 //

25

26 [2] Plaintiff's opposition does not challenge the Arbitration Agreement on the basis that the agreement is
   unconscionable or otherwise unenforceable under state law. Because Plaintiff has not raised this issue, the Court will
   not address it. *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) ("[t]he burden of proving unconscionability rests upon
27 the party asserting it."); *Lim v. TForce Logistics, LLC*, 8 F,4th 992, 1000 (9th Cir. 2021). At the hearing, Plaintiff
   made some argument regarding procedural and substantive unconscionability, but conceded that he had not raised
28 such issues in his opposition and did not request leave to file supplemental briefing.

1    **V.     CONCLUSION AND ORDER**

2            For the foregoing reasons, the Court grants Defendant's motion to compel arbitration.

3            When a court concludes that a motion to compel arbitration should be granted, the FAA

4    provides that a court may stay the trial of the action upon application of one of the parties until

5    the arbitration proceedings are complete. *See* 9 U.S.C. § 3. Notwithstanding § 3, a court also has

6    authority to grant a dismissal where a court summarily finds that all claims are barred by an

7    arbitration clause. *See Forrest v. Spizziri*, --F.4th-- (9th Cir. Mar. 16, 2023) 2023 WL 2532059, at

8    *2 (longstanding precedent provides that "notwithstanding the language of § 3, a district court

9    may either stay the action or dismiss it outright when. . . the court determines that all of the

10   claims raised in the action are subject to arbitration.") (quoting *Johnmohammadi v.*

11   *Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014); *see also Sparling v. Hoffman*

12   *Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (providing that a district court acted within its

13   discretion when it dismissed, rather than stayed, claims that were contractually required to be

     submitted to arbitration).

14           Defendant requests dismissal of this action, or a stay in the alternative. Plaintiff does not

15   provide any argument in favor or against either option. Here, dismissal without prejudice is

16   appropriate because all claims are barred from proceeding in this Court due to the parties'

17   agreement to arbitrate all employment disputes. *See Villa v. Gruma Corporation*, No. 1:19-cv-

18   01721-DAD-BAM, 2020 WL 433098, at *2 (E.D. Cal. Jan. 28, 2020) ("Because all of plaintiff's

19   claims are subject to arbitration, the court can discern no reason to stay this action, and plaintiff

20   has not provided the court with any reason why it should do so. Therefore, the court will exercise

21   its discretion and instead dismiss this case without prejudice.").

22           Accordingly, IT IS ORDERED that:

23           1.     Defendant's motion to compel arbitration (ECF No. 9) is GRANTED;

24           2.     The parties are required to submit all claims in this matter to arbitration;

25           3.     This case is DISMISSED WITHOUT PREJUDICE; and

26   \\\

27   \\\

28   \\\

                                                11

4.      The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **March 27, 2023**                              /s/ *Erica P. Grosjean*
                                                         UNITED STATES MAGISTRATE JUDGE